IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| J. WALTER THOMPSON PUERTO RICO, INC.,<br><br>Plaintiff,<br><br>        v.<br><br>LATIN AMERICAN MUSIC COMPANY, INC., et. al.,<br><br>Defendants. | CIVIL NO. 17-1094 (FAB) |

## REPORT AND RECOMMENDATION

## INTRODUCTION

The present case is the tail-end of a saga involving the use of a musical composition "Llegó la Navidad" which was written by Raúl Balseiro ("Balseiro"). The facts are derived from the Court's Opinion and Order at Docket No. 56.

Plaintiff J. Walter Thompson Puerto Rico ("Walter Thompson") is an advertising company which was hired by Walgreens pharmacies to produce a marketing campaign for its 2016 Christmas season. As part of the agreement between them, Walter Thompson agreed to indemnify and defend Walgreens against all litigation relating to the marketing campaign. Walter Thompson obtained a license from co-Defendant Peer International ("Peer") for use of the composition "Llegó la Navidad" in the campaign for a $5,500.00 fee. After the marketing campaign aired, co-Defendants Latin American Music Company ("LAMCO"), a music publisher, and ACEMLA, a performing arts society, contacted Walgreens claiming they possessed exclusive rights to the composition. The present case thus arises from the parties' bickering over the rights for the song. Because ownership of the composition remained in dispute and the parties failed to clarify the issue between

themselves, Walter Thompson withheld payment of the $5,500.00 licensing fee from Peer and filed the present interpleader action against Peer, LAMCO and ACEMLA.

After some motion practice between the parties, the Court ultimately found in favor of co-Defendant Peer, and for a number of reasons detailed in its Opinion and Order, held that LAMCO and ACEMLA were barred from claiming ownership of the composition in question. (Docket No. 56, p. 14). The Court further held that the litigation was frivolous, and set the stage for a possible finding of Rule 11 sanctions, by stating as follows: "The following two circumstances persuade the Court that this litigation is unfounded: (1) the 1995 agreement between LAMCO, ACEMLA and Balseiro and (2) representations made by LAMCO and ACEMLA in bankruptcy proceedings". (Id. at pp. 15-16). The Court then ordered LAMCO and ACEMLA's counsel to show cause in writing why the Court should not impose sanctions against them. (Id. at p. 18).

In compliance therewith, attorneys Robert Penchina ("Mr. Penchina"), Jelka Duchesne ("Ms. Duchesne") and Ibraham Latiff Carrasquillo ("Mr. Latiff") each filed an individual *Ex Parte* document in compliance. (Docket Nos. 58, 59, and 60). Attorney Kelly Talcott ("Mr. Talcott") failed to comply with the Court's Order. Peer then filed a "Motion for Attorney's Fees, Costs and Sanctions", which LAMCO and ACEMLA opposed, and Peer replied thereto (Docket Nos. 66, 71 and 75). The presiding District Judge referred these motions to a magistrate judge for a report and recommendation. (Docket Nos. 68 and 69).

J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 3
_____

## LEGAL ANALYSIS

There are two separate and distinct issues in the referral, to wit, the attorney's fees and the sanctions. The Court examines them in turn.

### A. Attorney's Fees.

In a federal copyright action, the court may award full costs and reasonable attorney's fees to the prevailing party, which can be plaintiff or defendant. 17 U.S.C. § 505. When such an award is made, it should "encourage the production of original literary, artistic, and musical expression for the good of the public." Fogerty v. Fantasy, Inc., 510 U.S. 517, 524, 114 S. Ct. 1023, 1028 (1994). District judges have great discretion in deciding what claimed legal services should be compensated in federal fee-shifting cases, and they more commonly calculate fee awards using the lodestar method. See Brewster v. Dukakis, 3 F.3d 488, 492 (1st Cir. 1993) (reviewing order limiting § 1988 awards and underscoring "the ample discretion of the district judge -the judicial officer who is most familiar with the case, the attorneys, and the interactive nuances- in constructing fee awards"); see also Spooner v. EEN, Inc., 644 F.3d 62, 67 (1st Cir. 2011) and Latin Am. Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 488 F.Supp.2d 33, 37 (D.P.R. 2007) (calculating fees in both cases using lodestar method under Copyright Act).

In evaluating whether to award attorney's fees to a prevailing party, the court may consider several non-exclusive factors such as frivolousness, motivation, objective reasonableness, considerations of compensation, and deterrence. Fogerty, 510 U.S. at 534

_____

n. 19, 114 S.Ct. 1023. Yet, a showing of frivolity or bad faith is not required; rather, a prevailing party only needs to show that its opponent's copyright claims or defenses were "objectively weak." García-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 20 (1st Cir. 2005). Even then, in copyright cases a district court may award attorney's fees to a prevailing party when all the arguments the losing party made were reasonable. Id. at 21 (*citing* Matthews v. Freedman, 157 F.3d 25, 29 (1st Cir. 1998)).

Peer argues that the Court should award attorney's fees for two reasons. First, although under the federal "American Rule" parties typically bear their own attorney's fees absent statutory authorization, Peer contends that it is a prevailing party and is therefore entitled to fees pursuant to the statute in question, 17 U.S.C. § 505, which specifically allows for them. Second, Peer posits that LAMCO and ACEMLA's claims were frivolous and unreasonable because their acquisition of the rights to the composition in question was always questionable and they had previously failed to prove ownership of this exact copyright in a previous case. Thus, all parties were forced to unnecessarily litigate this case.

In opposition thereto, LAMCO and ACEMLA argue the request for attorney's fees should be denied, insofar as Peer did not prevail entirely (it did not succeed in its cross-claim against LAMCO and ACEMLA). They further assert that they had good faith basis for their claims, that the issue involved was simple as it merely involved a $5,500.00 license and was dismissed practically at its inception. Finally, they argue that the amount of attorneys who worked on the case and fees sought are excessive in light of the limited

_____

issue presented.

In support of its defense that their claims were not frivolous or ill motivated, LAMCO and ACEMLA offer the declaration of lead counsel Robert Penchina, filed *ex parte* in response to the order to show cause, which explicitly states why LAMCO and ACEMLA believed they had a colorable claim to the composition in question and why they chose to proceed the way they did in this litigation. (Docket No. 58).

In the end, the Court does not need to enter into the Fogerty[1] elements, because even assuming all arguments presented by LAMCO and ACEMLA were reasonable, the presiding District Judge found in favor of Peer and already determined that LAMCO and ACEMLA had been frivolous because the 1995 agreement that they claimed gave them rights over the song was suspect, and because LAMCO and ACEMLA failed to assert ownership of the song in the asset schedules filed before the bankruptcy court. Although LAMCO and ACEMLA argue in their opposition to the motion for attorney's fees that the Court was "misled" by Peer's assertions, they had a full and fair opportunity to present all evidence before the presider, and further, failed to appeal or otherwise seek reconsideration of the Court's findings. For these reasons, Peer is entitled to attorney's fees.

To determine a reasonable amount of attorney's fees, courts in the First Circuit apply the "lodestar" approach, first calculating the prevailing hourly rate and then time spent performing the various legal tasks, finally subtracting those which are excessive,

_____

[1] Frivolousness, motivation, objective reasonableness, considerations of compensation, and deterrence.

duplicative, or unnecessary. Tejada-Batista v. Fuentes-Agostini, 263 F.Supp.2d 321, 326-27 (D.P.R. 2003). In order to receive the proper award of attorney's fees, a prevailing party must submit with its motion evidence to support the number of hours and rates sought, and apply the prevailing rates *in the community*. Id. (emphasis added).

According to the lodestar method, "the hourly rate should be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Tejada-Batista, 263 F.Supp.2d at 327 (*quoting* Blum v. Stenson, 465 U.S. 886, 895, n. 11, 104 S.Ct. 1541 (1984)). "In reaching its determination, the court may rely upon its own knowledge of attorney's fees in the community." Rodríguez v. Int'l Coll. of Bus. and Tech., Inc., 356 F.Supp.2d 92, 96 (D.P.R. 2005) (*citing* Missouri v. Jenkins by Agyei, 491 U.S. 274, 285, 109 S.Ct. 2463 (1989)).

Peer submits it spent $295,985.19 in litigating this case. Part of this amount belongs to work done by Peer in LAMCO and ACEMLA's bankruptcy proceeding, where Peer argues it was forced to unnecessarily expend additional amounts of money.[2] LAMCO and ACEMLA aver that any award made to Peer must be reduced, insofar the fees incurred in the bankruptcy proceedings are not recoverable here, the fee rates being sought are far above those in this District, there was overstaffing and duplication of efforts.

In support of Peer's request for attorney's fees, it submits the following: A

_____

[2] Peer discusses the basis for its involvement and expenses incurred in LAMCO and ACEMLA's bankruptcy claim in detail at Docket No. 66, pp. 7-10. For purposes of this Report and Recommendation, it suffices to say that, as part of the bankruptcy case, Peer requested a lift of the bankruptcy stay so that the present case could proceed to a final judgment, including a determination of attorneys' fees, with the understanding that Peer would collect attorneys' fees awarded against LAMCO and ACEMLA through the bankruptcy process.   Although ACEMLA and LAMCO consented to this, they later objected to Peer's proof of contingent claims and Peer was forced to expend additional monies litigating those issues.

_____

declaration of Barry Slotnick ("Mr. Slotnick"), lead counsel for Peer, with information regarding the various attorneys and staff who worked on the case; detailed information about his firm and detailed biographical information on all stateside counsel who worked on the case; detailed information about partner, and associate billing practices nationwide for comparable firms for 2012-14, and for partner, associate, of counsel and paralegal billing for 2015, including Puerto Rico; detailed billing for this case for stateside counsel; and a declaration from local counsel Katarina Stipec ("Ms. Stipec") regarding her billing in this case. Ms. Stipec did not include biographical information about her or her firm, although the Court is cognizant of it.

The hourly fees that are being charged by counsel in this case, as Mr. Slotnick explains in his affidavit, "were calculated by dividing the amount billed by that professional, subtracting from that amount any discounts extended to Peer, and diving the result by the total hours worked." This exercise resulted in the following hourly rates for stateside counsel and staff:

1. Barry Slotnick (Partner, 1972 law license) - $ 780.13

2. Frank D'Angelo (Senior Litigation Associate, 2010 license) - $619.61

3. Erin Smith Dennis (Litigation Associate, 2014 law license) - $595.00

4. Daniel Besikof (Partner, 2005 law license)- $697.79

5. Bethany Simmons (Associate, 2013 law license) - $595.00

6. Antoinette Pepper (Paralegal, 30 years' experience) - $415.00

7. Geri Papa (Paralegal, 25 years' experience) - $425.00

_____

     8. Roxanne McCrae (Paralegal, 7 years' experience) – $242.50

     9. Timothy Cummins (Paralegal, 25 years' experience) - $380.00

     10. Shireen Kumar (Research Librarian, several decades experience) $ 267.75

Ms. Stipec, a Junior Partner who billed her time at $250.00 an hour, claimed no adjustment for her billed time.

The Court will not delve on the details of the motion practice incurred in this case and will not unnecessarily nitpick how attorneys litigate their case. The Court is satisfied in its reading of the entries made by the attorneys and the staff who worked on the case, and finds that they persuasively explained their entries and will not second-guess their decisions. See Deary v. City of Gloucester, 9 F.3d 191, 197-98 (1st Cir. 1993) (*citing* Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986)) (attorneys must submit a full and precise accounting of their time, including the number of hours, dates, and the nature of the work performed); see also Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (finding attorney's billing records to be acceptable when they listed "the different tasks performed, the nature of the work, the time consumed, and the dates when effort was expended") and Latin Am. Music Co. v. Archdiocese of San Juan, No. CIV.96-2312 (JAF), 2010 WL 1427671, at *1 (D.P.R. Apr. 7, 2010), *aff'd sub nom.*, 642 F.3d 87 (1st Cir. 2011) (The First Circuit disfavors the court's second-guessing a firm's allocation of tasks where the party is satisfied with counsel's performance). Furthermore, the Court finds appropriate the incremental billing rate for all counsel and staff involved, which is in increments of .10.

However, the Court does take issue with the hourly rates because under the lodestar approach, the hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541 (1984); see also Gross v. Sun Life Assurance Co. of Canada, 880 F.3d 1, 23 (1st Cir. 2018) ("reasonable hourly rates should be set by reference to rates in the court's vicinage rather than in the lawyer's region of origin") and Brewster, 3 F.3d at 492 (use of local market rates as a starting point for attorney's fees).

Peer argues that it is entitled to the prevailing rate where the attorney billing is from, that is, New York for most counsel who worked on this case, and Puerto Rico for local counsel. LAMCO and ACEMLA claim that the prevailing rate is the local prevailing rate, that is Puerto Rico, and not the New York prevailing rate. The Court cannot agree with Peer.

While the Court finds that stateside Peer counsel have properly evidenced their hourly rates and their substantial qualifications and background, see Hensley, 461 U.S. at 433, their hourly rates are simply excessive for this particular case in this forum. See Maceira v. Pagán, 698 F.2d 38, 40 (1st Cir. 1983) ("Where it is unreasonable to select a higher priced outside attorney - as, for example, in an ordinary case requiring no specialized abilities not amply reflected among local lawyers - the local rate is the appropriate yardstick").

This case presented a limited issue of rights over one song, and was dismissed

practically at the pleadings stage. <u>See</u> Docket No. 56, Opinion and Order, where the Court dismissed the case after ruling on motions filed pursuant to Fed. R. Civ. P. 12(c) and 12(b)(6). No complicated issues were litigated or so exhaustively argued that mandated outside counsel of the magnitude involved here. *Cf.* <u>Maceira</u> 698 F.2d at 40 (fees awarded at out of town rate where case involved complex Landrum-Griffin Act issues and no local counsel with same degree of expertise and specialization was found); <u>Top Entertainment v. Torrejón</u>, 349 F.Supp.2d 248 (D.P.R. 2004) (fees awarded at local rate, not at higher, Miami, Florida rate based on attorney experience and because no complex issues were litigated).

In the instant case, while all of Peer stateside counsel have impressive resumés and experience, the Court finds that their hourly rates are not comparable to any in this district and Peer has provided no justifiable argument as to why the Court should deviate from the relevant caselaw regarding the prevailing rate at the local jurisdiction. They argue that the rate should be "where the work is performed", yet have submitted no legal basis for that argument. A different case might be made if the issues which were litigated involved specialized counsel only available in New York. <u>Maceira</u>, 698 F.2d at 40. Yet, that is not the case here. This case was filed in Puerto Rico and litigated in Puerto Rico, where able and competent counsel, Ms. Stipec, was located. Peer chose instead to place the bulk handling of the case in the hands of stateside counsel. Peer now has to abide by that decision. Moreover, stateside counsel chose to litigate in Puerto Rico and cannot ignore the prevailing rates in Puerto Rico when calculating their fees.

<u>J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.</u>
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 11
_____

Based on the experience, the Court's knowledge on the subject and the 2015 hourly billing rates chart submitted by Peer (which includes Puerto Rico), the Court finds the rate of $350.00 per hour for Partner Mr. Slotnick to be comparable to rates paid to other experienced attorneys practicing in the San Juan metropolitan area. <u>See</u> <u>Navarro-Ayala v. Governor of Puerto Rico</u>, 186 F. Supp. 3d 128, 137 (D.P.R. 2016) (Besosa, J.) (collecting cases and applicable rates).

Accordingly, the Court recommends the following rates for the remaining stateside counsel and staff who worked on this case as follows:

1. Partner Mr. Slotnick: $350.00

2. Partner Mr. Besikof: $350.00

3. Senior Associate Mr. D'Angelo: $200.00

4. Associates: $150.00

5. Paralegals: $100.00

6. Librarian: $75.00

The above rates amount to the following totals:

1. $13,755.00 for Mr. Slotnick (39.3 hours at ($350.00)

2. $22,785.00 for Mr. Besikof (65.1 hours at $350.00)

3. $32,100.00 for Mr. D'Angelo (160.5 hours at $200.00)

4. $10,830.00 for Ms. Dennis (72.2 hours at $150.00)

5. $8,970.00 for Ms. Simmons (59.8 hours at $150.00)

6. $795.00 for Mr. Ernst (5.3 hours at $150.00)

7.  $1,910.00 for Ms. Pepper (19.1 hours at $100.00)

8.  $280.00 for Ms. Papa (2.8 hours at $100.00)

9.  $90.00 for Ms. McRae (0.9 hours at $100.00)

10. $770.00 for Mr. Cummins (7.7 hours at $100.00)

11. $105.00 for Ms. Kumar (1.4 hours at $75.00)

These amounts added up yield a total amount of **$92,390.00** for stateside counsel.

The Court finds the hourly fee charged by Junior Partner Ms. Stipec adequate at $250.00. Ms. Stipec's firm is charging a total of $28,593.50 for 120.10 hours of work, with Ms. Stipec billing 106.80 hours at $250.00 and the remaining 13.3 hours billed by other staff at varying hourly rates. Yet, while Ms. Stipec included a declaration in support of her hours, no information was included regarding other local staff members who worked on this case. The Court will not do counsel's work. Consequently, the Court recommends disallowing the 13.3 hours allotted for work done by Yaritza Cruz Delgado, Lourdes Arroyo Portela, Shylene de Jesús Rivera and Rebecca Cotto Morales. Subtracting those reduced hours from local counsel's total 120.10 hours brings Ms. Stipec's total hours to 106.80, for a total award of **$26,700.00** for local counsel. Combined, stateside and local counsel hours add up to **$119,090.00.**

Additionally, although the Court will not question the work performed, it does find that LAMCO and ACEMLA are correct in their overstaffing argument. See Total Petroleum Puerto Rico Corp. v. Colón, 819 F. Supp. 2d 55, 71 (D.P.R. 2011) (Besosa, J.)

J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 13
_____

(fees may be reduced because of the overstaffing of a case). Here, the bulk of the fees belong to seven attorneys, namely, two Partners, one Junior Partner, one Senior Associate and three Associates. The remaining fees, which comprised a nominal amount of approximately 32 hours, were charged by four Paralegals and one Librarian. Costs were not included in this calculation, as those have already been referred by the presiding Judge to the Clerk of the Court. See Docket No. 68. Mindful of the fact that these seven lawyers participated both in this case and the bankruptcy filings, the amount of staff involved seems to be excessive in light of the claims which were litigated and the short amount of time in which it was done. The undersigned therefore recommends reducing the total award by ten percent, for a total award of **$107,181.00.**

Regarding the issue of the bankruptcy fees, the undersigned recommends that they be included in the calculation of attorney's fees in this case, because they are related to the present case and "were necessary to preserve plaintiffs claim". Mitchell Int'l, Inc. v. Fraticelli, No. CIV. 03-1031 GAG/BJM, 2007 WL 4197583, at *10 (D.P.R. Nov. 26, 2007).

For all the aforementioned reasons, the Court recommends a reduction in the hourly fee for all stateside counsel as described above, disregarding hourly fees for all local counsel except Ms. Stipec, and a reduction in the total award of ten percent for overstaffing. This analysis yields a total award for Peer of **$107,181.00** in attorney's fees.

**B. Sanctions.**

The second portion of Peer's request deals with the imposition of sanctions against LAMCO and ACEMLA's counsel. In its Opinion and Order at Docket No. 56, the Court

_____

ordered LAMCO and ACEMLA's counsel to explain the following: (1) whether LAMCO and ACEMLA claimed to own "Llegó la Navidad," (2) on what basis counsel filed documents to the Court representing that LAMCO and ACEMLA owned "Llegó la Navidad," and (3) why the Court should not impose sanctions pursuant to Rule 11. (Docket No. 56, p. 9).

Fed. R. Civ. P. Rule 11 requires that a motion filer "certify that to the best of the [filer]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the filing does not offend the rule's commands. That is to say, the "legal contentions" must be "warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law". See Fed. R. Civ. P. 11(b)(2)-(3). The purpose of this rule is to deter frivolous filings and streamline the administration and procedures of the federal courts. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S.Ct. 2454 (1990). Although a party's request to impose sanctions must be made on a separate motion, as in the present case, the Court may order on its own initiative a party to show cause why they have not violated Rule 11(b). Fed. R. Civ. P. 11(c).

Whether a filer breached these duties "depends on the objective reasonableness of the [filer's] conduct under the totality of the circumstances." See Navarro-Ayala v. Núñez, 968 F.2d 1421, 1425 (1st Cir. 1992). Counsel is held "to standards of due diligence and objective reasonableness," not "perfect research or utter prescience." Me. Audubon Soc'y v. Purslow, 907 F.2d 265, 268 (1st Cir. 1990). Yet, Rule 11 "is not a strict liability

_____

provision"-a filer "must, at the very least, be culpably careless" to be sanctioned. See Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 39 (1st Cir. 2005).

Peer contends that counsel in the present case, Ms. Duchesne and Mr. Penchina, were largely responsible for the actions undertaken in this case in light of the reality surrounding the crucial composition in question, mainly that LAMCO and ACEMLA had been unable to prove ownership of it in a previous case. Peer also posits that the bankruptcy proceedings were vexatious and prolonged by LAMCO and ACEMLA's actions and that Mr. Penchina and Ms. Duchesne participated in other LAMCO/ACEMLA's cases that have bearing here. For these reasons, Peer contends that sanctions should be imposed against LAMCO and ACEMLA's counsel.

Complying with the Court's Order, Mr. Penchina, Ms. Duchesne and Mr. Latiff filed *ex parte* responses. Part of the problem is that the actions that led to the filing of this case - the alleged threats to Walgreens for use of the song, and the initial motion practice in the case - were not made by counsel now appearing to show cause, but rather by missing counsel Mr. Talcott. Mr. Penchina admits as much when he states that: "I do not know what the prior attorneys meant by the statements in their pleadings", because he didn't prepare or file them. Penchina Declaration, Docket No. 58, p. 3, ¶ 7. Thus, Mr. Penchina and Ms. Duchesne can only attest to the actions that they undertook, to wit, the "Motion to Stay" (Docket No. 38), the "Motion to Dismiss" (Docket No. 45) and afterwards.

In Mr. Latiff's case, his involvement was even more limited as he alleges he had no

J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 16
_____

bearing on the documents filed, basically was local counsel for Mr. Talcott[3] and was working on a contract basis when he withdrew from the case after Ms. Duchesne appeared. Therefore, the Court's concern as to whether LAMCO and ACEMLA claimed to own "Llegó la Navidad," and on what basis counsel filed documents representing that they owned the composition largely went unanswered, as it was Mr. Talcott who undertook those actions, and he has failed to comply with the Court's order to show cause. Additionally, Mr. Talcott did not answer Mr. Penchina's or Ms. Duchesne's repeated calls and letters.[4]

Mr. Penchina argues that persons who have been granted exclusive licenses by owners of copyrights have standing to sue for copyright infringement, and that is LAMCO and ACEMLA's basis for the claims raised in this case. "The distinction is legally significant because persons other than the copyright owner, for example exclusive licensees, are appropriate claimants who may register a copyright in their own name. I note, however, that while I do not believe that LAMCO or ACEMLA own the copyright to "Llegó la Navidad", it is for reasons other than those expressed by the Court. I do, however, believe that LAMCO is the exclusive license holder, and thus had standing to assert the claims it made in this case". Penchina Declaration, Docket No. 58, pp. 4-5, ¶7. Ms. Duchesne basically states the same. Duchesne Declaration, Docket No. 59, p. 7.

Mr. Penchina further avers that the recently reconfirmed testimony of Balseiro's

_____

[3] Mr. Latiff filed Mr. Talcott's motion to appear *pro hac vice* before this Court. (Docket No. 13).
[4] Apparently, Mr. Talcott has even failed to communicate with his clients, LAMCO and ACEMLA, after the Spanish Broadcasting verdict was rendered against them. See Penchina Declaration, Docket No. 58, p. 3, ¶ 5.

daughter provided a factual basis to oppose Peer's claim seeking a declaration that it was sole owner of the composition in question. He further states that "LAMCO and ACEMLA had viable defenses to the claims asserted against them by Peer—including the statute of limitations defense set forth in their motion to dismiss Peer's cross-claim. Defending against Peer's claim was important because, even if LAMCO and ACEMLA do not themselves currently own the copyright to "Llegó la Navidad", it is possible for them to cure that defect by entering into a new agreement with Mr. Balseiro's heirs. But a cure may be unavailable if Peer was declared to be the exclusive owner of the copyright". (Docket No. 71-1, p. 6).

As to participation here, Mr. Penchina asserts that he and Ms. Duchesne were not part of this case until May 15, 2017 and May 17, 2017, respectively. By that time, LAMCO/ACEMLA had already filed for bankruptcy, this case had been ongoing for several months, LAMCO/ACEMLA's cross-claim against Peer had already been filed, and had been answered by Peer. The only pleading that was outstanding when Ms. Duchesne and Mr. Penchina appeared was LAMCO/ACEMLA's answer to Peer's cross-claim. Although at that time they considered withdrawing their claim against Peer, Mr. Penchina and Ms. Duchesne ultimately decided against it because Peer had filed an answer instead of a petition to dismiss.

Regarding past cases that have relevance here, Mr. Penchina and Ms. Duchesne had no involvement in the Media Power case. Media Power held that LAMCO and ACEMLA had failed to prove ownership of "Llegó la Navidad" and because of that, this

<u>J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.</u>
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 18
_____

Court in its Opinion and Order found they were now collaterally estopped from asserting copyright protection for the same.

Mr. Talcott, who had been representing LAMCO/ACEMLA in this case initially, also represented them before the district court in two other cases that have bearing here, to wit, <u>LAMCO, et al. v. Spanish Broad. Sys., Inc.</u>, Civ. 13-1526 (S.D.N.Y.) and <u>ACEMLA v. Banco Popular de P.R.</u>, Civ. 13-1822 (D.P.R). Mr. Penchina and Ms. Duchesne were not involved in those cases at the trial level, and rather frankly admit that Mr. Talcott engaged in "questionable conduct" in the <u>Spanish Broadcasting</u> case. Mr. Penchina avers he had no part in that case until the appeal. In addition, as previously stated, Mr. Talcott was ordered to show cause in the present case and he failed to comply with the Court's Order.

Regarding the bankruptcy case, where Peer alleges great misfeasance, none of the attorneys here were retained in connection with the bankruptcy nor did they make an appearance in the bankruptcy court. There, they were represented by entirely different counsel, Victor Gratacós. LAMCO and ACEMLA' actions before the bankruptcy court were one of the reasons the presider found this case frivolous - because they had not asserted any ownership rights in the song in question, but were asserting them here. Mr. Penchina states that "I cannot speak for what the bankruptcy attorneys submitted, but I believe that the distinction relates to the fact that LAMCO is an exclusive licensee but not the copyright owner of this song". Penchina Declaration, Docket No. 58, p. 7, ¶ 15. Additionally, because that conduct took place in the bankruptcy case by other counsel, Mr. Penchina and Ms. Duchesne argue they should not be penalized in the case at bar

J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 19
_____

for said conduct.

Moreover, Mr. Latiff states that his involvement in the case was to act as local counsel for Mr. Talcott, and denies having any participation drafting any of the responsive pleadings. Mr. Latiff was in the case for four months before filing a motion to withdraw from the case due to other work opportunities, once Ms. Duchesne made an appearance.

The undersigned is satisfied with counsel for LAMCO and ACEMLA's explanations for their actions in this case. They have demonstrated to have a colorable defense for their claims, and Mr. Penchina candidly states that "if I were starting this case from the beginning, I may very well have advised LAMCO and ACEMLA not to assert a claim that would necessitate their having to demonstrate ownership of that composition. When I came aboard to defend LAMCO and ACEMLA's interests, the claim at issue had already been made". Penchina Declaration, Docket No. 58, p. 7. ¶ 17.

Rule 11 sanctions serve two main purposes, to wit, deterrence and compensation. See Navarro-Ayala, 968 F.2d at 1426. There are good reasons for tying the monetary sanction to the costs that an attorney or litigant imposes on the Court, because "the judicial system of dispute resolution is not cost-free and those who abuse it through misconduct impose direct costs on the law abiding taxpayers who support it." Specialized Plating, Inc. v. Federal Envtl. Serv., Inc., 975 F.Supp. 397, 398 (D. Mass. 1997) (basing $5,250 sanction on the waste of three hours of the court's time).

In view of the foregoing, the undersigned finds that deterrence and compensation are sufficiently served by the recommended award of attorney's fees, because

_____

"proportionality is often a proxy for appropriateness". <u>Navarro-Ayala</u>, 968 F.2d at 1426; <u>see also</u> <u>Anderson v. Beatrice Foods Co.</u>, 900 F.2d 388, 395 (1st Cir. 1990) (in fashioning a sanction, it is important that "the punishment should be reasonably suited to the crime"). Furthermore, and keeping in mind that it was Mr. Talcott's actions which caused this lawsuit to be filed in the first place, and the record is devoid of any explanation for his actions, substitute counsel for him have shown to the Court's satisfaction good-faith basis for their limited undertakings in the case. Accordingly, the Court does not recommend the imposition of any sanctions under Rule 11 against attorneys Penchina, Duchesne and Latiff. Finally, the undersigned makes no recommendation as to Mr. Talcott, as there is no justification in the record for his actions.

## CONCLUSION

For the aforementioned reasons, it is recommended to the Court to GRANT IN PART and DENY IN PART Peer's Motion for attorney's fees and sanctions (Docket No. 66), as follows:

      a. GRANT IN PART the request for attorney's fees, and award a total of **$107,181.00** in attorney's fees;

      b. DENY the request to impose sanctions on counsel Penchina, Duchesne and Latiff.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. <u>See</u> Amended Local Rules.  Failure to file same within the specified

J. Walter Thompson Puerto Rico, Inc., v. Latin American Music Company, Inc., et al.
Civil No. 17-1094 (FAB)
Report and Recommendation
Page 21
_____

time waives the right to appeal this order.   Henley Drilling Co. v. McGee, 36 F.3d 143,

150–151(1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986) and Paterson-

Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

    In San Juan, Puerto Rico, on this 11th day of October, 2018.


                        S/CAMILLE L. VELEZ-RIVE
                        CAMILLE L. VELEZ RIVE
                        UNITED STATES MAGISTRATE JUDGE